**Affirmed and Opinion filed December 21, 2018**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00382-CV

## WILMINGTON TRUST, NATIONAL ASSOCIATION, Appellant

## V.

## HSIN-CHI-SU A/K/A NOBU SU, Appellee

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2015-23016**

## O P I N I O N

Appellant Wilmington Trust, National Association, filed suit against appellee Hsin-Chi-Su a/k/a Nobu Su, a Taiwanese national, seeking to collect on a guaranty Su signed in Taiwan concerning a loan to E Whale Corporation. Su filed a special appearance, which the trial court granted.

Wilmington Trust challenges the trial court's dismissal order in a single issue,

making two primary arguments. First, it argues that Su had substantial purposeful contacts with Texas because he was the alter ego of E Whale Corporation. Second, it argues that Su personally had numerous purposeful contacts with Texas that were connected with the operative facts of the guaranty litigation. We overrule Wilmington Trust's issue because the jurisdictional evidence does not establish that Su was E Whale Corporation's alter ego or that he purposefully availed himself of the privilege of conducting activities within Texas, thereby invoking the benefits and protections of Texas laws. We therefore affirm the trial court's order dismissing Wilmington Trust's claims against Su.

## BACKGROUND

Su is a Taiwanese citizen residing in Taipei, Taiwan. Su is the head of a family business his father started in 1958. Among other entities, Su is the president and sole shareholder of E Whale Corporation. E Whale Corporation owned a single large cargo vessel, the M/V E Whale.[1] According to Su, it was common practice in the shipping industry to create a separate company to own a single cargo ship due to the high monetary risk involved in shipping expensive international cargos. E Whale Corporation was organized under the laws of the Republic of Liberia.

In 2010, E Whale Corporation borrowed $91.6 million from a group of lenders represented by Mega International Commercial Bank Co., Ltd., a Taiwanese bank, to purchase the M/V E Whale. Su signed a guaranty agreement promising to pay E Whale Corporation's loan obligations if it failed to do so. Su signed the guaranty in Taiwan. The guaranty contains a choice-of-law clause providing that it is governed by Taiwanese law.

---

[1] The record indicates there were seven separate Whale Corporations, A through H, each owning a single vessel.

2

Wilmington Trust is a national banking association chartered under the laws of the United States. Its main office is located in Wilmington, Delaware. Wilmington Trust is not a resident of Harris County, Texas. Wilmington Trust offered evidence that it replaced Mega International Commercial Bank as the agent representing the group of lenders that made the loan guaranteed by Su.

E Whale Corporation and other companies within Su's family of businesses signed a lease for office space in Houston, Texas in 2013. As Su explained, the intent behind this move was to gain access to the crude oil shipping market centered in Houston. Su believed this Houston office became E Whale Corporation's principal place of business.

Many of the Whale corporations, including E Whale Corporation, were experiencing financial difficulty when the Houston office was leased. The financial issues were so severe that E Whale Corporation defaulted on its $91.6 million loan. After the default, Mega International Commercial Bank sent a demand letter to Su in Taiwan seeking payment on the guaranty agreement. Su did not respond to the demand letter. In addition, E Whale Corporation's creditors began in rem proceedings against the M/V E Whale, which was located in South Africa. E Whale Corporation and others, eventually including B, C, D, G, and H Whale Corporations, filed Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the Southern District of Texas. The bankruptcy filing temporarily stayed the South African proceedings against the M/V E Whale.

The companies' creditors opposed the bankruptcy filings by arguing there were no meaningful ties to the United States. The bankruptcy court conducted an evidentiary hearing on the creditors' motion to dismiss and Su testified during the hearing. When asked if he believed that the debtor companies were committed to the Houston bankruptcy process, Su testified that he believed they were, "because I

3

have my joint and severely [sic] personal guarantee to this case. This is very serious because I am [a] responsible person to pay the debt . . . to all of the creditors." Su continued that he believed Houston was the right location for the bankruptcy filing because it is the center of crude oil transportation and he believed the debtor companies needed access to this business. Despite expressing initial doubt about the Houston location, the bankruptcy court denied the motion to dismiss because it ultimately found that the debtors' Texas assets established jurisdiction.

E Whale Corporation's creditors filed claims in the bankruptcy proceeding. The bankruptcy court eventually lifted the automatic stay, allowing the M/V E Whale to be sold by a South African court. The ship was sold at judicial auction for $61 million, leaving an unpaid balance on the E Whale Corporation loan totaling more than $20 million.

Su personally held Japanese, Korean, and Chinese patents relating to piping structures used on ships. Su had allowed five of the corporations that he owned as the sole shareholder—B, C, D, G, and H Whale Corporations—to use his patents without requiring them to pay royalty or license fees. The creditors asked the bankruptcy court to order the sale of the B, C, D, G, and H Whale ships, free and clear of all interests, to the creditors of each corporation. Su objected that allowing sales free and clear of all interests would infringe on his personally held intellectual property rights.

The bankruptcy court approved the sale of the ships free and clear of all interests. In the order approving the sale, the bankruptcy court noted that Su had withdrawn his objection to the sales because the bankruptcy court had simultaneously ordered:

> To the extent that this Court or the United States District Court for the Southern District of Texas (the "District Court") shall determine that

(i) Mr. Su has a valid claim against the Estate in respect of the Alleged Su [Patent] Claims, and (ii) the Debtor transferred property rights to the buyer that did not lawfully belong to the Debtor, [lender Defendants'] monetary obligations and Alleged Su [Patent] Claims may be equitably adjusted if . . . an action, proceeding or contested matter is commenced by Mr. Su on or before August 15, 2014. For the avoidance of doubt, the automatic stay is hereby lifted to permit filing of such actions in this Court or in the United States District Court. . . .

By entering this order, the bankruptcy court authorized Su to challenge the transfer of his alleged intellectual property rights by filing lawsuits, within a specified deadline, in either the federal bankruptcy court or district court. Soon thereafter, Su filed three lawsuits—none involving the M/V E Whale vessel or E Whale Corporation—in the U.S. District Court for the Southern District of Texas. Because the defendant creditors who had purchased the ships and thereby allegedly received Su's intellectual property rights were the same entities that had received personal guarantees from Su backing the B, C, D, G, and H Whale Corporations' loans, the bankruptcy court's order authorized Su to ask to have his personal guarantees "equitably adjusted" by the amount of any wrongfully transferred intellectual property rights. Su also joined Mega Bank and Wilmington Trust, the original agent and alleged successor agent for the various Whale Corporation lenders, as defendants.

During this same general time period, Su was involved in other litigation in Harris County. First, Su was named as a defendant in a lawsuit filed by Vantage Drilling Company. Vantage Drilling alleged numerous causes of action against Su, including breach of his fiduciary duties as a director of that company, fraud, fraudulent inducement, and negligent misrepresentation. Su filed an answer and a counterclaim. The record in this appeal does not indicate whether Su contested personal jurisdiction in the Vantage Drilling case. Second, Su was named as a defendant in an arbitration filed in Harris County arising out of a dispute over

5

attorney's fees. Su did not, however, appear during the arbitration proceeding. The arbitrator entered an award against Su and the plaintiff sought to confirm the award in federal district court. Our record does not indicate whether Su appeared in that federal suit, or whether the federal court entered an order confirming the arbitration award. Wilmington Trust contends on appeal that Su breached the E Whale Corporation guaranty because he did not notify it of either lawsuit, which it asserts he was required to do under the terms of the guaranty.

Wilmington Trust eventually filed suit against Su in Harris County, seeking to collect on the personal guaranty he had signed backing the E Whale Corporation loan.[2] Wilmington Trust alleged that the sale of the M/V E Whale had not paid off the outstanding loan balance, and therefore Su was required by his personal guaranty to pay the remaining balance. Su filed a special appearance objecting that the Harris County District Court did not have personal jurisdiction over him. The trial court signed an order granting Su's special appearance and dismissing the case against him. This appeal followed.

## ANALYSIS

Wilmington Trust argues in a single issue on appeal that the trial court erred when it granted Su's special appearance and dismissed the case against him. Su responds that we should affirm the trial court's dismissal because he has not purposefully availed himself of the protections offered by Texas law and courts. As we explain below, we agree with Su and affirm the trial court's order granting Su's special appearance.

---

[2] Wilmington Trust had previously filed litigation in Taiwan related to the various Whale Corporations' loans.

6

## I. Standard of review and applicable law

A specially appearing defendant has the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo, but the trial court frequently must resolve questions of fact in order to decide the issue of jurisdiction. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, a trial court does not issue findings of fact and conclusions of law with its ruling on a special appearance, all findings necessary to support the ruling and supported by the evidence are implied, though the sufficiency of the record evidence to support those findings may be challenged on appeal. *Id.* at 795.

Texas courts may assert personal jurisdiction over a nonresident if the Texas long-arm statute authorizes the exercise of personal jurisdiction and the exercise is consistent with federal and state constitutional due-process guarantees. *E.g.*, *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Supreme Court of Texas has consolidated these inquiries, holding that the Texas long-arm statute's broad language allows Texas courts to exercise personal jurisdiction as far as the Due Process Clause of the Federal Constitution permits. *BMC*, 83 S.W.3d at 795 (citing *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). The requirements of the Texas long-arm statute are fulfilled if an assertion of personal jurisdiction is consistent with federal due-process limitations. *See Moki Mac*, 221 S.W.3d at 575.

Due process is satisfied when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Nawracaj v. Genesys Software Sys., Inc.*,

524 S.W.3d 746, 753 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Minimum contacts exist when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005); *Nawracaj*, 524 S.W.3d at 753.

There are three components to the "purposeful availment" inquiry. *Searcy v. Parex Res., Inc.,* 496 S.W.3d 58, 67 (Tex. 2016). First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Id.* Second, the contacts must be purposeful rather than random, fortuitous, isolated, or attenuated. *Id.* Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.* What the parties thought, said, or intended "is irrelevant to their jurisdictional contacts." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 147 (Tex. 2013).

A nonresident defendant's purposeful contacts with the forum state may give rise to general or specific jurisdiction. *BMC*, 83 S.W.3d at 795–96. Both are at issue here.

General jurisdiction is present when the defendant's contacts in a forum state are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Id.* at 796. For a corporate defendant to be subject to general jurisdiction in a forum, the defendant's continuous and systematic contacts must be at such a high level that they render the defendant essentially at home in the forum state. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). In general, a corporation is at home in its place of incorporation and its principal place of business, though in an exceptional case its operations in another forum may be so substantial and of such a nature to render the corporation at home there as well.

*BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Activities less extensive than this "will not qualify for general in personam jurisdiction." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007) (internal quotation marks omitted). In analyzing general jurisdiction, we consider only the defendant's contacts that have occurred up to the time the lawsuit is filed. *PHC-Minden, L.P.*, 235 S.W.3d at 169. Additionally, because general jurisdiction is dispute-blind, the incident made the basis of the suit "should not be the focus in assessing continuous and systematic contacts." *Id.* Finally, "as a general rule, a court may not assert personal [general] jurisdiction over an individual based on the individual's relation to a corporation unless the corporation is the individual's alter ego." *Booth v. Kontomitras*, 485 S.W.3d 461, 482 (Tex. App.—Beaumont 2016, no pet.).

Specific jurisdiction exists if the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation. *Id.* For a nonresident defendant's contacts with Texas to support an exercise of specific jurisdiction, there must be a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585; *see also Kelly*, 301 S.W.3d at 655. Generally, a specific-jurisdiction analysis should be performed on a claim-by-claim basis. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150. When separate claims are based on the same forum contacts, however, a separate analysis of each claim is not required. *Id.* at 150–51.

## II. Wilmington Trust has not established that Su is the alter ego of E Whale Corporation or is otherwise subject to general jurisdiction in Texas.

Wilmington Trust's jurisdictional arguments, both general and specific, depend largely on its contention that Su is E Whale Corporation's alter ego. We

9

therefore turn first to the question whether Wilmington Trust met its burden to establish that contention.

Jurisdiction over an individual cannot, as a general rule, be based upon jurisdiction over a corporation. *Nichols v. Lin*, 282 S.W.3d 743, 750 (Tex. App.—Dallas 2009, no pet.). Under appropriate circumstances, however, a court may pierce the corporate veil and bring a shareholder within its jurisdiction. *Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468, 481 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *BMC Software*, 83 S.W.3d at 798). One basis for doing so is the alter ego doctrine, which applies when there is such a unity between the corporation and an individual that the separateness of the two has ceased and asserting jurisdiction over only one would result in injustice. *Id.*; *see Zamarron v. Shinko Wire Co., Ltd.*, 125 S.W.3d 132, 141–42 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (observing that court may pierce corporate veil for jurisdictional purposes when parent corporation exerts such domination and control over subsidiary corporation that two corporations cease being separate and distinct entities). To fuse the two for jurisdictional purposes, a plaintiff must prove the individual exercises atypical control over the internal business operations and affairs of the corporation that is inconsistent with the individual's role as owner, director, or shareholder. *See PHC-Minden*, 235 S.W.3d at 175–76.

To determine whether an alter ego relationship exists for jurisdictional purposes, "courts look to the total dealings of the corporation and the individual, including the degree to which corporate and individual property have been kept separate, the amount of financial interest, ownership, and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Cappuccitti*, 222 S.W.3d at 481. Courts also consider the following as evidence of alter ego status: payment of alleged corporate debt with

10

personal checks or other commingling of funds, representations that the individual will back the corporation financially, the diversion of corporate profits for personal use, and inadequate capitalization. *Id.* at 482. An individual's status as an officer, director, or shareholder of an entity, standing alone, is not enough to support an alter ego finding. *Id.*; *see Zamarron*, 125 S.W.3d at 142.

The party seeking to pierce the corporate veil for jurisdictional purposes has the burden to present evidence demonstrating the alter ego relationship. *BMC Software*, 83 S.W.3d at 798. On appeal, we consider whether the record as a whole supports the trial court's implied finding that Su is not E Whale Corporation's alter ego. *Wormald v. Villarina*, 543 S.W.3d 315, 322 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Fjell Tech. Gp. v. Unitech Int'l, Inc.*, No. 14-14-255-CV, 2015 WL 457805, at *6–7 (Tex. App.—Houston [14th Dist.] Feb. 3, 2015, pet. denied).

In arguing that it proved Su is E Whale Corporation's alter ego, Wilmington Trust points to the following undisputed facts as evidence of that relationship: (1) Su owned all of E Whale Corporation's stock; (2) E Whale shared office space and addresses with other Su-affiliated companies; (3) Su allowed various Whale corporations to use his patented technology free of charge and "without any supporting documentation to prove it"; (4) management of the E Whale Corporation and the M/V E Whale vessel was divided among several Su-affiliated companies without making formal payment for the services provided; and (5) Su signed a guaranty backing the E Whale Corporation loan. Wilmington Trust also argues that Su "commandeered the E Whale Corporation for his own personal benefit" because he testified that his potential liability as a guarantor was one of the reasons he believed the Su entities were committed to a Houston bankruptcy. In Wilmington Trust's view, the cumulative effect of the above evidence establishes that Su

exercised a far greater degree of control than that normally associated with common ownership and directorship, and he was therefore the alter ego of E Whale Corporation.

We do not agree that the evidence cited by Wilmington Trust establishes that Su is E Whale Corporation's alter ego. First, the evidence cited by Wilmington Trust demonstrates that E Whale Corporation was not managed by Su. The record shows instead that the ship was managed by several separate and distinct entities owned by other members of Su's family. Su explained that management of the Whale vessels was divided among several management teams that had the expertise to handle specific aspects of operating commercial cargo ships efficiently. The management teams included: operations management in Taiwan, which handled the accounting and legal aspects of running the ships; commercial management, which marketed the ships; and technical management, which operated and maintained the ships. Although it is true Su owned all of E Whale Corporation's stock, that fact standing alone is insufficient to demonstrate an alter ego relationship. *See Zamarron*, 125 S.W.3d at 142 ("One hundred percent stock ownership, commonality of officers and directors, and an exercise of control derived from stock ownership are not sufficient to establish an alter ego relationship.").

Beyond the evidence of stock ownership, Wilmington Trust has not pointed to any other evidence in the record demonstrating that Su actually exercised atypical control over the day-to-day internal operations of the M/V E Whale vessel. *See BMC Software*, 83 S.W.3d at 799 ("To fuse the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary."); *TMX Fin. Holdings, Inc. v. Wellshire Fin. Servs., L.L.C.*, 515 S.W.3d 1, 9 (Tex. App.—Houston [1st Dist.] 2016, pet. filed) ("It is this plus factor [of abnormal control] that converts, for jurisdictional

12

purposes, the typical parent-subsidiary relationship—which involves common ownership, monitoring, reporting, and articulating of general policies—into an alter-ego relationship."). The evidence that Su did not require E Whale Corporation to pay a license fee for the use of his patented technology, and that the corporation was not required to make formal payments for the services provided by the various management companies not owned by Su, simply shows that Su and other family members subsidized the operations of E Whale Corporation. There is no evidence of atypical control associated with these subsidies, nor is there evidence that Su commingled or diverted corporate funds for personal use. Additionally, the evidence that E Whale Corporation shared office space with other Su-affiliated entities does not establish that Su was the alter ego of E Whale Corporation. *See id.* (concluding evidence of shared office space is insufficient, without more, to establish alter ego).

To the extent Wilmington Trust argues that the evidence discussed above demonstrates a lack of adherence to corporate formalities and a blurring of corporate boundaries, we disagree. The evidence indicates instead that the various Su entities adhered to corporate boundaries and corporate formalities. *See Wormald*, 543 S.W.3d at 322 (rejecting alter ego theory of personal jurisdiction because although there was evidence that "various corporate entities closely worked together, there is no evidence that [the alleged individual alter egos] dominated the will of any of the entities"); *Knight Corp. v. Knight*, 367 S.W.3d 715, 730 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("This burden cannot be satisfied merely by establishing that the parent corporation dominates the subsidiary and exerts its control both commercially and financially in substantially the same way it does over those selling branches or departments of its business."). In any event, evidence of a lack of observance of corporate formalities does not compel an alter ego finding. *See TMX Fin. Holdings, Inc.*, 515 S.W.3d at 9 ("[W]e decline to conclude that the failure to

follow corporate formalities, particularly for this family-held group of entities is sufficient, in itself, to demonstrate that the two entities are one.").

We turn next to Wilmington Trust's contention that Su's guarantee of E Whale Corporation's debt is evidence demonstrating the blending of their separate identities. Wilmington Trust cites *Gonzalez v. Lehtinen*, a conversion case from the Corpus Christi Court of Appeals, in support of this contention. No. 13-06-00441-CV, 2008 WL 668600, at *5 (Tex. App.—Corpus Christi Mar. 13, 2008, pet. denied) (mem. op.). In *Gonzalez*, the court of appeals affirmed the denial of Gonzalez's special appearance. We conclude that *Gonzalez* does not support Wilmington Trust's position because it is factually distinguishable.

In that case, Lehtinen alleged that Gonzalez, a citizen of Mexico, induced him and his company into a business relationship with Gonzalez's McAllen truck dealership by personally assuring Lehtinen that Gonzalez was a very wealthy man and there would be no money problems with the truck dealership. *Id.* at *1. Lehtinen further alleged that Gonzalez later agreed to pay for Lehtinen's trucks delivered to the McAllen dealership. *Id.* at * 5. There was evidence in the record that Gonzalez controlled the daily operations of the dealership directly. *Id.* at *6. This evidence demonstrating that the separate identity of Gonzalez and the dealership had ceased to exist is missing from the record before us.

Finally, Wilmington Trust argues Su is the alter ego of E Whale Corporation because he placed his own financial interest ahead of the corporation's when he testified that one of the reasons E Whale Corporation voluntarily submitted itself to Chapter 11 bankruptcy was that he was a guarantor of the original $91 million loan. That was not the only reason Su gave for the bankruptcy filing, however. Su also testified to a direct business purpose benefiting E Whale Corporation: reorganizing the corporation so it could start offering crude oil transport from Houston.

14

Wilmington Trust has not cited any authority for the proposition that mixed purposes behind a bankruptcy filing demonstrate the level of abnormal control necessary to establish alter ego. *See Womald*, 543 S.W.3d at 322 (rejecting appellants' alter ego arguments in part because they failed to meet their burden to come forward with evidence of alter ego). Although Su might benefit indirectly from a successful E Whale Corporation reorganization by not having to pay off E Whale Corporation's debt, we conclude this indirect personal benefit is insufficient to establish he is E Whale Corporation's alter ego. *See id.* at 321 (suggesting that personal benefit necessary to support alter ego finding for jurisdictional purposes is use of corporate entity's funds for direct personal benefit of alleged alter ego); *Cappuccitti*, 222 S.W.3d at 482 (observing that diversion of corporate profits for personal use is factor to be considered in alter ego analysis).

On this record, the trial court reasonably could find that Wilmington Trust did not meet its burden of proof to establish that Su is E Whale Corporation's alter ego. *See Wormald*, 543 S.W.3d at 322. Therefore, E Whale Corporation's contacts with Texas cannot be imputed to Su. Because Wilmington Trust's arguments that Su is subject to general jurisdiction rest entirely on its alter ego allegation, which we have rejected, the trial court correctly concluded that Su is not subject to general jurisdiction in Texas.

## III. Su is not subject to specific jurisdiction in Texas.

Having determined that Su is not E Whale Corporation's alter ego, we turn to whether Su's own purposeful contacts with Texas are sufficient to support specific jurisdiction. Wilmington Trust initially argues that Su is subject to personal jurisdiction in the guaranty lawsuit because he initiated prior litigation in Texas involving the same transaction as the guaranty: (1) the E Whale Bankruptcy; and (2) Su's litigation regarding Asian patents, which he filed in response to the bankruptcy

15

court's order directing the sale of several Whale vessels—not including the M/V E Whale—free and clear of all interests. Wilmington Trust cites our *Zamarron* opinion for the proposition that "voluntarily filing a lawsuit in a jurisdiction is purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit only when the lawsuits arise from the same general transaction." 125 S.W.3d at 143.

With respect to the E Whale Corporation bankruptcy, Wilmington Trust asserts that "Su personally initiated the E Whale bankruptcy for his own benefit." But the bankruptcy was filed by E Whale Corporation, not Su. Although Su signed the voluntary petition, he did so as the president of the corporation, not in his personal capacity. Whether Su may have been motivated, at least in part, by some personal interest in addition to a business interest benefitting the corporation is not relevant to the analysis of the jurisdictional contact. *See Kulko v. Superior Ct. of Cal.*, 436 U.S. 84, 94–95 (1978) ("Nor can we agree with the assertion of the court below that the exercise of *in personam* jurisdiction here was warranted by the financial benefit appellant derived from his daughter's presence in California [rather than his New York residence] for nine months of the year."); *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 147 ("But what the parties thought, said, or intended is generally irrelevant to their jurisdictional contacts.").

Wilmington Trust directs us to the recent decision in *Cornerstone Healthcare Group Holding, Inc. v. Nautic Management VI, L.P.*, 493 S.W.3d 65 (Tex. 2016). In that case, the supreme court held private equity funds that created subsidiaries for the sole purpose of investing in and profiting from Texas assets were subject to specific jurisdiction in Texas on a suit arising out of the investment transaction. *Id.* at 72–74. This holding does not aid Wilmington Trust because there is no evidence Su created E Whale Corporation to invest in or declare bankruptcy in Texas. We

16

therefore conclude that the E Whale Corporation bankruptcy is not a purposeful contact by Su.[3]

Wilmington Trust also points to Su's Houston litigation regarding the Asian patents. We conclude this litigation is not a purposeful Texas contact for two reasons. First, it did not relate to E Whale Corporation or Su's guaranty of its loan and did not invoke Texas law. Second, even if the Asian patent litigation were somehow connected with E Whale Corporation, the litigation was filed in response to a court's order and therefore was not a voluntary contact by Su with Texas. *Zamarron*, 125 S.W.3d at 143 (observing that "voluntarily filing a lawsuit in a jurisdiction is purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit only when the lawsuits arise from the same general transaction"); *see TV Azteca v. Ruiz*, 490 S.W.3d 29, 38 (Tex. 2016) ("To constitute purposeful availment, the defendant's contacts must be 'purposefully directed' to the state, and must result from the defendant's own 'efforts to avail itself of the forum.'" (internal citation omitted)); *Moncrief Oil Intern., Inc.*, 414 S.W.3d at 153 (concluding court had personal jurisdiction over defendants because "they were not unilaterally haled into forming contacts with Texas").

Wilmington Trust asserts that Su also had other contacts with Texas that support the exercise of personal jurisdiction because, in Wilmington Trust's view, they have a connection with the E Whale guaranty. Wilmington Trust points to two different litigation matters: (1) the Vantage Drilling case, a lawsuit filed by a third party against Su alleging that he wrongfully induced the third party to issue a large

---

[3] To the extent Wilmington Trust relies here on its contention that Su is E Whale Corporation's alter ego, we have already addressed and rejected that contention. The alter ego doctrine therefore cannot transform the E Whale bankruptcy filing into a prior lawsuit filed by Su. For the same reason, Wilmington Trust's citation of the Beaumont Court of Appeals' *Booth* opinion, an alter ego case, is inapposite. 485 S.W.3d at 482–83.

17

amount of stock, and (2) an arbitration involving unpaid legal fees also initiated by a third party against Su. Wilmington Trust contends these two matters support personal jurisdiction because Su failed to provide notice to Wilmington Trust of either matter, which Wilmington Trust contends breached the guaranty agreement.

We conclude neither litigation matter supports the assertion of personal jurisdiction here. First, neither matter qualifies as a purposeful availment by Su because both were the result of the "unilateral activity of another party or a third person." *TV Azteca*, 490 S.W.3d at 38. Second, any connection between these two matters and the E Whale guaranty transaction is far too tenuous to support an assertion of specific jurisdiction over Su. *See Moki Mac*, 221 S.W.3d at 585 (stating "that for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation"); *Megadrill Servs., Ltd. v. Brighouse*, 556 S.W.3d 490, 498 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (rejecting argument "that a defendant's participation in a lawsuit constitutes consent to personal jurisdiction in that forum *ad infinitum*.").

Finally, Wilmington Trust points to Su's occasional trips to Texas during which he conducted business and allegedly "first breached the obligations under" his guaranty. We conclude these allegations are insufficient to establish specific jurisdiction over Su in this case. First, we do not consider the merits of a party's claims when analyzing personal jurisdiction. *See Weldon-Francke v. Fisher*, 237 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Additionally, the jurisdictional evidence establishes that Su is a Taiwanese resident and the guaranty agreement was executed in Taiwan, as was the original E Whale Corporation loan. The record also shows that the demand letter from Mega International Bank—the original agent of the E Whale Corporation lenders—was addressed to Su at his

18

Taiwan address, and suit was first filed in Taiwan to collect on the loan and guaranty. Further, the M/V E Whale was arrested and subsequently sold in South Africa. Although Wilmington Trust argues that Su made trips to Texas during which he "litigate[d], and [ran] his companies here while in breach," there is no evidence that he conducted E Whale Corporation business beyond making the decision, as president of E Whale Corporation, to file bankruptcy.

We conclude that Su's Texas contacts referenced by Wilmington Trust have no substantial connection with the operative facts of the litigation and cannot support asserting specific personal jurisdiction over him. *See Turman v. POS Partners, L.L.C.*, 541 S.W.3d 895, 906 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (concluding no personal jurisdiction over defendant in breach of contract claim in part because some of defendant's alleged Texas contacts were made while he was conducting business for his own company, not plaintiff's, and therefore had no substantial connection to operative facts of plaintiff's breach of contract claim); *Info. Serv. Grp., Inc. v. Rawlinson*, 302 S.W.3d 392, 404 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (concluding no personal jurisdiction in part because defendant's contacts with Texas, including several trips to Texas for company conferences, were not substantially related to operative facts of case). We hold that the trial court did not err when it concluded specific personal jurisdiction over Su was lacking.

## CONCLUSION

We hold that the trial court did not err when it granted Su's special appearance.[4] We therefore overrule Wilmington Trust's single issue on appeal and

---

[4] Because we have determined that Su did not have sufficient minimum contacts with Texas for a Texas court to assert either general or specific personal jurisdiction over him, we need not reach Wilmington Trust's arguments regarding whether subjecting Su to personal jurisdiction in a Texas court would offend traditional notions of fair play and substantial justice.

affirm the trial court's dismissal of Wilmington Trust's lawsuit against Su.

/s/    J. Brett Busby
Justice

Panel consists of Justices Busby, Brown, and Jewell.

20