

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00098-CV

Matthew **MARSENISON**,
Appellant

v.

Charles & Donna **ROSS**, Stephen Brown, Doug Butler, Jep & Judy Canon, Pete Carlsson,
Teresa & Joe Coldewey, Jessica Curry, Angela Eaton, Ronny & Stephanie Fikes, John &
Margaret Gallagher, Gary & Mary Griffin, Chase James, Mike Kelley, John LaMaestra, Nunzio
& Marcella LaMaestra, Ed Long, Patrick McNamara, Jules Morris, Lawrence Neil, Andrea &
Denis Pantel, Mike Saenz, John Sconiers,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2019CI03292
Honorable Norma Gonzales, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: August 16, 2023

REVERSED AND RENDERED

Appellant Matthew Marsenison appeals the trial court's order overruling his special

appearance, arguing the trial court did not have personal jurisdiction over him. We reverse the trial

court's order overruling Marsenison's special appearance and render judgment dismissing the

lawsuit against him for lack of personal jurisdiction.

**BACKGROUND**

This dispute involves the solicitation of investment for a third-party jet engine refurbishment business. Victor Farias, Integrity Aviation & Leasing, LLC's president, allegedly represented to investors he was raising capital for investing with nonparty Turbine Engine Center, Inc., which located, purchased, refurbished, and leased jet engines to commercial air carriers.[1] Marsenison was president and a principal of Turbine—a wholly-owned subsidiary of Odyssey Engines, LLC. Appellees Charles and Donna Ross allege they met with Marsenison in Florida and after the meeting, they invested with Integrity.

In 2019, after Integrity's payments to investors slowed and then stopped, the appellees sued Farias and Integrity. They alleged $1,000,000 in damages and claims for money had and received, breach of contract, conversion, and fraud. They amended their petition, adding Odyssey the same year. The trial court then granted default judgments against Integrity and Odyssey in March 2021.

The following month the appellees amended their petition again to add Marsenison. Marsenison responded by filing a special appearance in May 2021. In November, before the trial court had ruled on Marsenison's special appearance, the appellees amended their petition again, removing the paragraph describing service on Marsenison in Florida and adding two sentences alleging Marsenison was Turbine's alter ego, who conducted fraudulent transfers when he received money from Integrity.[2] The appellees then responded to the special appearance, which was followed by a hearing on December 1, 2021.

---

[1] A second entity is identified in the record as "Integrity Aviation, LLC." It is not clear from the record whether Integrity Aviation & Leasing, LLC and Integrity Aviation, LLC are the same entity or distinct entities. For convenience, we use the term "Integrity" to refer to both entities, except where the use of the name of one or the other entity is relevant to the analysis in the opinion.

[2] The trial court also granted a default judgment against Farias in November 2021.

On December 22, 2021, the trial court denied Marsenison's special appearance, and this appeal followed.

**PERSONAL JURISDICTION**

Marsenison argues the trial court erred by denying his special appearance because the trial court did not have personal jurisdiction over him either through general or specific jurisdiction.

**A. Standard of Review**

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). "When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling," as is the case here, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). "If "jurisdictional facts are undisputed," then "whether those facts establish jurisdiction is a question of law." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018).

A defendant may file a special appearance objecting to the trial court's exercise of personal jurisdiction over them "on the ground that such party . . . is not amenable to process" issued by Texas courts. TEX. R. CIV. P. 120a(1). "The plaintiff bears the initial burden of pleading allegations that suffice to permit a court's exercise of personal jurisdiction over the nonresident defendant." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). A specially-appearing defendant must negate all bases of personal jurisdiction alleged. *Id.* "The plaintiff may respond to any evidence presented by the defendant by presenting evidence that affirms its jurisdictional allegations." *Nw. Cattle Feeders, LLC v. O'Connell*, 554 S.W.3d 711, 722 (Tex. App.—Fort Worth 2018, pet. denied). "The court shall determine the special appearance on the basis of the pleadings, any

stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3).

### B. General Jurisdiction

A defendant's forum contacts may give rise to general or specific jurisdiction. *Luciano*, 625 S.W.3d at 8. General jurisdiction is a "high bar." *Searcy*, 496 S.W.3d at 72. "General jurisdiction is present when the defendant's contacts in a forum state are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state." *Wilmington Tr., Nat'l Ass'n v. Hsin-Chi-Su*, 573 S.W.3d 845, 854 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see Luciano*, 625 S.W.3d at 8. "In analyzing general jurisdiction, we consider only the defendant's contacts that have occurred up to the time the lawsuit is filed." *Hsin-Chi-Su*, 573 S.W.3d at 854. "Additionally, because general jurisdiction is dispute-blind, the incident made the basis of the suit 'should not be the focus in assessing continuous and systematic contacts.'" *Id.* (quoting *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 169 (Tex. 2007)). For an individual defendant, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

The appellees alleged:

- "Marsenison is a co-conspirator with the Defendant Victor Farias."

- "Plaintiffs sue Marsenison for fraudulent transfers as a result of money received from Integrity Aviation."

- Marsenison possessed money "belong[ing] to the Plaintiffs in equity and good conscience."

- Marsenison's actions above converted Plaintiffs money with malice.

- Marsenison knowingly made material misrepresentations to the Plaintiffs.

- "In the alternative, Plaintiff[s] allege[] that Marsenison is the alter ego of [nonparty] Turbine Engine, Inc."

Marsenison challenged the trial court's personal jurisdiction over him by filing a special appearance and sworn affidavit. In the affidavit, Marsenison stated he did "not maintain a place of business in Texas," has "not engaged in business in Texas," had "no business operations in Texas," and had not otherwise "implicitly sought benefits" in Texas. He added he had "no employees, servants or agents in Texas" and has "not committed a tort in whole or in part in Texas." He further added "to the best of my information and belief, I have had no contact with any of the named Plaintiffs in this case."

The appellees responded by arguing Marsenison schemed with Farias to defraud Texas residents, identifying as evidence (1) an undated slide deck of a prospective investor presentation entitled "30-Month Secured Private Placement" on behalf of issuer Integrity Aviation, LLC, (2) certain Chase bank account statements identifying deposits made to Turbine Engine Center, Inc., (3) excerpts of Marsenison's deposition testimony, and (4) an affidavit of Misti Ducharme.

The investor presentation provides "Integrity Aviation [was] in partnership with Turbine, . . . a Miami, FL commercial aircraft engine maintenance facility." It further explained "Integrity raises capital so Turbine can locate, purchase, and refurbish engines and other aviation assets, then lease them to commercial air carriers." Integrity "serves as the Lease Servicing Agent and Portfolio Manager of all aircraft engines and other aviation assets acquired by [Turbine]."

It further provides Integrity's address as Boerne, Texas. The investor presentation includes a business summary plan, providing, in pertinent part, "[n]ewly acquired engines are . . . overhauled . . . through the [Turbine] facility in Miami, Florida." The investor presentation also includes a "Management Team" section identifying Marsenison as Turbine's President and Principal.

The Chase bank account statements include a $25,000 deposit made in an Integrity Aviation Chase account in February 2014, with a description of the transaction referring to Turbine.[3] The statements also include multiple electronic withdrawals totaling several hundred thousand dollars in March and April 2015 with a description of the transaction referring to Turbine.[4]

Ducharme's affidavit states Marsenison and Farias had a "plan to raise money for the purpose of buying aircraft engines and have Turbine . . . repair . . . and lease them," and the plan "led to the offering [identified in the investor presentation]." Ducharme also testified at the hearing, explaining she was appellees Charles and Donna Ross's daughter and was a sales consultant recruiting investors for Farias and Integrity between 2013 and 2018. She stated she and Farias flew to Florida during that period and met with Turbine's owner, Marsenison. She further testified she knew of no other Turbine owners. She initially testified funds from Integrity were paid to Turbine but later admitted she had no such knowledge. She denied ever having distributed the investor presentation, did not know who assembled it, and had no knowledge of Marsenison ever sending it to anyone.[5] Ducharme further testified Turbine was acquired by Odyssey and added Marsenison never claimed Odyssey ownership. She conceded Marsenison never held a position at Integrity. She further testified she exchanged a few phone calls and texts with him relating to the potential purchase of airplane engines, but she did not identify who initiated the conversations, or where or when the conversations took place.[6]

---

[3] The deposit description provides: "Fedwire Credit Via: Wells Fargo Bank/121000248 B/O: Turbine Engine Center Inc Medley Fl 33178-1350 Ref: Chase Nyc/Ctr/Bnf=lntegrity Aviation & Leasing LLC Boerne TX 78006-8190 . . . ."

[4] As an example, one description provides: "03/31 Wire Transfer Via: Wells Fargo NA/121000248 A/C: Turbine Engine Center, Inc Ref: Re: Engine Purchase . . . ."

[5] She also testified she did not believe the Marsenison photo looked like him.

[6] Ducharme also explained she had one additional meeting with Marsenison in Florida in 2018 regarding forming a new company, and she knew, at the time, Marsenison was no longer involved with Turbine.

At the hearing, appellee Donna Ross testified she and her husband, appellee Charles Ross, traveled to Florida in 2013 to meet Marsenison at his facility. She further testified she never met him in Texas and did not communicate with him other than at the Florida meeting; she specifically stated she only communicated with Farias. She further testified Integrity's website linked to Turbine and Marsenison and an internet search of Marsenison would produce results with Integrity. She agreed, however, Marsenison provided her with none of the information or written documentation she received. She further agreed Marsenison signed no contracts or notes. She also testified she knew Marsenison was Turbine's president and CEO, not Integrity's.

During his deposition, Marsenison denied (1) he ever had any business dealings with Integrity, (2) he entered into any agreements with it, and (3) ever seeing the investor presentation. He further denied he had any Integrity management role and had no explanation for why an old photo of him appeared in the investor presentation. He testified Turbine had no business dealings with Victor Farias, Integrity and Turbine never jointly financed the purchase of any jet engines, and he had no knowledge as to whether any withdrawals in the Chase account were a result of funds raised from investors secured through the investor presentation. He further explained his relationship with Turbine ceased in early 2016.

Marsenison also testified during the hearing. He explained he lived in Lighthouse Point, Florida and had lived in Florida since 1994. He conceded he was Turbine's part owner and explained Odyssey was formed as Turbine's holding company. He was an officer of both Odyssey and Turbine; he was never an officer, director, or employee "of anything associated with Integrity." He sold his interest in Odyssey in October 2016. He further explained he never maintained a place of business, employees, agents, mailing address, telephone, bank account, or an office in Texas or entered a contract with any Texas business, citizen, or resident. He conceded any contracts would have been between Integrity and Turbine. He explained he never received any money from Farias

or Integrity. He did not remember the Rosses but knew Ducharme. He further testified he did not solicit investors for Integrity.

There is no dispute Marsenison is domiciled in Florida and not in Texas. His domicile therefore cannot serve as the basis for general personal jurisdiction. *See Daimler*, 571 U.S. at 137. There is no evidence showing Marsenison had any contacts with anyone that took place in Texas and certainly no "continuous and systematic" contacts establishing general jurisdiction. *See Luciano*, 625 S.W.3d at 8; *Hsin-Chi-Su*, 573 S.W.3d at 854.

For the appellees to establish Marsenison was subject to general jurisdiction through their alter ego theory, they would have had to prove Marsenison was the alter ego of a Texas resident. *See BMC*, 83 S.W.3d at 799; *see, e.g.*, *Fisher v. Eagle Rock Custom Homes Inc.*, No. 14-18-00483-CV, 2020 WL 205975, at *6 (Tex. App.—Houston [14th Dist.] Jan. 14, 2020, no pet.) (mem. op.) (concluding appellees did not present any evidence to pierce corporate veil between appellant and any entities doing business in Texas). Even assuming the evidence showed Marsenison was Turbine's alter ego, as the appellees allege, there is no evidence in the record showing Turbine's Texas contacts were so continuous and systematic so as to render Turbine essentially "at home" in Texas. *See Searcy*, 496 S.W.3d at 72. Instead, the evidence shows Turbine was organized in Florida and conducted its business outside of Texas.

Because the appellees failed to demonstrate Marsenison was either domiciled in Texas or had contacts with the state that were so continuous and systematic so as to render him essentially at home in Texas, Marsenison is not subject to general jurisdiction in Texas. *See Daimler*, 571 U.S. at 139; *Luciano*, 625 S.W.3d at 8.

### C. Specific Jurisdiction

Texas courts may exercise specific "jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent

with federal due-process guarantees." *Luciano*, 625 S.W.3d at 8. The long-arm statute provides "[i]n addition to other acts that may constitute doing business," a nonresident does business in Texas if (1) they contract "with a Texas resident and either party is to perform the contract in whole or in part in this state" or "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE § 17.042. "Consistent with federal due-process protections, a state may assert personal jurisdiction over a nonresident defendant only if the defendant has established minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Luciano*, 625 S.W.3d at 8 (internal quotation marks omitted). "The minimum contacts necessary for specific jurisdiction are established if the defendant purposefully avails itself of the privilege of conducting activities in the forum state, and the suit 'arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* at 8-9 (alterations in original) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)).

For purposeful availment, only the defendant's purposeful, non-isolated contacts with the forum are relevant, not another party or third person's unilateral activity. *See M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 886 (Tex. 2017). The defendant must seek some benefit, advantage, or profit by availing himself of the jurisdiction such that he impliedly consents to suit in the jurisdiction. *Id*.

The appellees contend Marsenison was subject to specific jurisdiction because Marsenison was on Integrity's management team and was liable for conspiracy and fraudulent transfers. However, the appellees do not identify any actions of Marsenison taking place outside Florida or any other purposeful, non-isolated contacts with Texas. *See id*. In his special appearance, Marsenison contended he had no place of business in Texas, had not engaged in business in Texas, and had no contact with the named plaintiffs. The appellees responded by identifying as evidence the investor presentation in which Marsenison is listed under the header "Management Team."

However, the description next to his picture does not provide he has any position at Integrity, but instead he was Turbine's president and principal and Turbine was "based out of Miami, FL." By contrast, Victor Farias, is identified as Integrity's President. Nothing else in the record suggested Marsenison was involved in authoring or distributing the investor presentation. The appellees identified no other evidence showing Marsenison worked for Integrity or that they had any communication with him other than when they visited the Turbine facility. Ducharme testified Farias and Marsenison worked together on the plan to fund Turbine's jet engine refurbishment business, but she admitted she had no knowledge any funds raised by Integrity were provided to Turbine, she did not know who assembled the investor presentation, and she had no knowledge of whether Marsenison distributed it. She further testified Marsenison never held a position at Integrity. Ducharme claimed she and Marsenison exchanged a few phone calls and texts, but she did not identify where they took place, did not claim Marsenison contacted her, and did not offer any other testimony suggesting the calls or texts furthered any actions taken by Marsenison to allegedly defraud Texas residents.

The appellees further argue Turbine had a longtime business relationship with Integrity, and Turbine bought, refurbished, and leased jet engines to compensate Integrity's investors. Even if the evidence supports this contention, it fails to establish any actions taken by Marsenison constituting purposeful, non-isolated Texas contacts. *See id.* Instead, the evidence supports Marsenison used to be an Odyssey and Turbine principal, Turbine is a Florida business, Integrity likely did provide funds to Turbine in Florida to purchase jet engines, and Marsenison, in his capacity as a Turbine principal, never did have contact with the appellees outside of their meeting in Florida.

Nothing else in the record shows Marsenison had any contacts with Texas qualifying as purposeful, non-isolated contacts with the forum or that he sought some benefit, advantage, or

profit from Texas. *See id.* Because the appellees failed to demonstrate Marsenison purposefully availed himself of the privilege of conducting activities in Texas, we cannot conclude Marsenison is subject to specific jurisdiction here. *See Luciano*, 625 S.W.3d at 8.

Accordingly, we hold the trial court lacked personal jurisdiction over Marsenison, and the trial court erred when it denied Marsenison's special appearance.

## CONCLUSION

Based on the foregoing, we reverse the trial court's order denying Marsenison's special appearance. We render judgment dismissing the appellees' lawsuit against Marsenison for lack of personal jurisdiction.

Luz Elena D. Chapa, Justice