**Opinion issued January 12, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00892-CV

_____

**ADELAIDA SALAZAR BAUTISTA A/K/A ADELAIDA ALVARADO, INDIVIDUALLY AND AS NEXT FRIEND OF MARIA JENNIFER AIDE A/K/A MARIA JENNIFER ALVARADO; A.A., A.A., I.S.A., M.A., AND E.A., MINORS; IRINEO ALVARADO AND MARIA ANA MOCTEZUMA,** Appellants

**V.**

**TRINIDAD DRILLING LIMITED,** Appellee

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-39781**

---

# O P I N I O N

This is an interlocutory appeal from a trial court's order in a wrongful-death

action, granting a special appearance filed by appellee Trinidad Drilling Limited, a

Canadian corporation. The decedent, Nabor Alvarado, was employed by an indirect subsidiary of Trinidad Drilling Limited, and that entity is a co-defendant in the ongoing case, along with additional codefendant manufacturers of drilling rig equipment sued on products liability and negligence theories.

Because the appellee satisfied its burden to negate all alleged bases of personal jurisdiction over it, we affirm the interlocutory order of the trial court.

## Background

Nabor Alvarado was fatally injured in July 2010 while installing a drilling rig for his employer, Trinidad Limited Partnership (Trinidad LP). His surviving relatives sued numerous parties, alleging that he was killed when a piece of the rig came loose and fell on him. In their second amended petition, the family joined as additional defendants the manufacturers of the rig and rig equipment, as well as the employer's indirect parent company, Trinidad Drilling Limited (Trinidad Ltd.).

Trinidad Ltd. is a foreign corporation organized under the laws of Canada and conducting business there. It filed a special appearance, supported by the affidavit of its Vice President of Finance, Gavin Lane, asserting that it was not subject to personal jurisdiction in a Texas court. After Alvarado's family filed a third amended petition and a response to the special appearance, Trinidad Ltd. filed a reply, supported by a second affidavit from Lane.

2

The trial court held a non-evidentiary hearing and sustained the special appearance, dismissing the claims against Trinidad Ltd. for lack of personal jurisdiction. Alvarado's family requested findings of fact, but the trial court did not enter the requested findings. The family then filed this interlocutory appeal from the order granting the special appearance. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7).

**Analysis**

The appellants contend that the trial court erred when it concluded that it could not exercise personal jurisdiction over Trinidad Ltd. and sustained the special appearance.

Texas courts may exercise personal jurisdiction over a nonresident if the long-arm statute authorizes it, consistent with federal and state constitutional due-process guarantees. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). The long-arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant that "does business" in Texas. *See* TEX. CIV. PRAC. & REM. CODE §§ 17.041–.045. The statute provides a non-exhaustive list of activities that constitute "doing business" in Texas. *Id.*; *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Given the statute's broad language, the Supreme Court of Texas has held that the statute extends Texas courts' jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software*,

3

83 S.W.3d at 795 (quoting *U-Anchor Advert., Inc. v. Burt*, 553 S.W.3d 760, 762 (Tex. 1977)). Thus, we rely on precedents from the United States Supreme Court and other federal courts, as well as Texas decisions, when determining whether a nonresident defendant has shown that the exercise of personal jurisdiction violates due process. *Id.*

Personal jurisdiction over a nonresident is consistent with due process when the nonresident has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). In most cases, the exercise of jurisdiction over a nonresident defendant will not conflict with notions of fair play and substantial justice if the nonresident has minimum contacts with the forum. *Moncrief Oil*, 414 S.W.3d at 154–55.

"A defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958)). The Supreme Court of Texas has identified three distinct aspects of the "purposeful availment" requirement. First, only the defendant's contacts with the forum are relevant.

*Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). A defendant should not be called to court in a jurisdiction solely as a result of the unilateral activity of another party or third person. *Id.* Second, the acts relied on must be purposeful, as opposed to random, isolated, or fortuitous. *Id.* Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.* "Jurisdiction is premised on notions of implied consent—that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there." *Id.* In contrast, "a nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction." *Id.*

A defendant's contacts can vest a court with either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795. Specific jurisdiction is established when the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657–58 (Tex. 2010). By contrast, a court may assert general jurisdiction over foreign corporations to hear any and all claims against them if their contacts with the forum state are so continuous and systematic that they are essentially at home in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

When a defendant challenges the exercise of personal jurisdiction in a special appearance, the plaintiff and the defendant bear shifting burdens. *Kelly*, 301 S.W.3d at 658. The initial burden is on the plaintiff to plead sufficient allegations to establish jurisdiction over the defendant. *Id.* After the plaintiff meets its initial burden,[1] the burden then shifts to the defendant to negate all bases of jurisdiction alleged by the plaintiff. *See id.* "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.*

The defendant can negate jurisdiction on either a factual or legal basis. *Id.* at 659. To negate jurisdiction on a factual basis, the defendant can "present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* Alternatively, the defendant can negate jurisdiction on a legal basis by showing that, "even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or

---

[1]     The parties dispute whether the appellants satisfied their initial burden to plead sufficient jurisdictional facts to bring Trinidad Ltd. within the reach of the long-arm statute. For purposes of our analysis, we assume without deciding that Alvarado's family met its initial burden and successfully shifted the burden to Trinidad Ltd. to negate all alleged bases for jurisdiction. In light of our ultimate conclusion that Trinidad Ltd. carried its burden, we need not resolve whether the burden was shifted in the first place. TEX. R. APP. P. 47.1.

6

that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id.*

Whether a court can exercise personal jurisdiction over a nonresident defendant is a question of law, and thus "we review de novo the trial court's determination of a special appearance." *Id.* at 657. When, as in this case, a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Moncrief Oil*, 414 S.W.3d at 150 (appeal from order granting special appearances); *see also Wellness Wireless, Inc. v. Vita*, No. 01-12-00500-CV, 2013 WL 978270 at *3 n.1 (Tex. App.—Houston [1st Dist.] Mar. 12, 2013, no pet.) (mem. op.).

## I. Specific jurisdiction

In conducting a specific jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation. *Kelly*, 301 S.W.3d at 658. For a nonresident's contacts with Texas to support the exercise of specific jurisdiction, there must be a substantial connection between the defendant's contacts with Texas and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

The appellants contend that the trial court erred when it granted the special appearance because of their allegations that Trinidad Ltd. exercised control over its subsidiary's safety policies with respect to drilling operations, and that it knew that

its control over such policies would extend to Texas. The appellants specifically disclaim any reliance on alter-ego or veil-piercing theories, and they contend that Trinidad Ltd. is subject to specific jurisdiction without imputation of any of Trinidad LP's Texas contacts. *See, e.g.*, *BMC Software*, 83 S.W.3d at 798–99 (discussing alter-ego theory used to "fuse" the parent company with its subsidiary for jurisdictional purposes). To this end, they contend that they have alleged tort claims "against Trinidad Ltd. for its own actions." In its special appearance, Trinidad Ltd. argued that these allegations do not demonstrate sufficient minimum contacts with Texas, thereby attempting to negate specific jurisdiction on a legal basis.

Personal jurisdictional analysis "always centers on the *defendant's* actions and choices to enter the forum state and conduct business." *Kelly*, 301 S.W.3d at 660. As such, the assertions that a tort was committed by the inaction of Trinidad Ltd. and that its effects were felt in Texas do not constitute sufficient minimum contacts to justify the exercise of personal jurisdiction over Trinidad Ltd. in Texas. *See Michiana*, 168 S.W.3d at 789–90. The mere existence of a cause of action against Trinidad Ltd. is not enough: Alvarado's family was required to "plead and, when challenged by the defendants, present evidence" that Trinidad Ltd.'s relevant acts (i.e., those connected to Alvarado's family's claims) "occurred, at least in part, in Texas." *Kelly*, 301 S.W.3d at 660–61.

The appellants have made numerous allegations in support of specific jurisdiction over a claim arising from Trinidad Ltd.'s control over the safety procedures to be followed on Trinidad LP's drilling rig. If a parent corporation assumes the duty to ensure the safety of its subsidiary's employees, it may be subject to tort liability when an employee is injured as a result of a breach of that duty. *See, e.g.*, *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993); *Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 717–18 (Tex. App.—Fort Worth 2013, no pet.); *Abdel-Fattah v. Pepsico, Inc.*, 948 S.W.2d 381, 385 (Tex. App.—Houston [14th Dist.] 1997, no pet.). To create such a duty, however, the parent corporation must have "had specific control over the safety and security of the premises, rather than the more general right of control over operations." *Tidwell*, 867 S.W.2d at 23; *see also Abdel-Fattah*, 948 S.W.2d at 386 (finding no liability when affirmative act was alleged negligent hiring of an employee who did not directly participate in acts which caused plaintiff's injuries).

The appellants allege that Trinidad Ltd. "exercised ownership, control and took responsibility for overseeing safety policies and procedures for the crews on the drilling rigs," and they contend on appeal that Trinidad Ltd. did not contest this allegation. However, Trinidad Ltd.'s special appearance stated that it "has never owned, controlled, managed, maintained, operated or supervised a place of business in the State of Texas." We conclude that this aspect of the pleadings was "challenged

9

by the defendants" and that the appellants were required to adduce evidence to show specific control over safety on the rig. *Kelly*, 301 S.W.3d at 661.

The appellants in this case have not alleged Trinidad Ltd.'s actual control or right of control prior to the accident over the specific aspect of safety and security that led to Alvarado's death. Instead, the appellants have asserted Trinidad Ltd.'s general control over operations, stating that liability stemmed from Trinidad Ltd.'s supervision of the "HSE (Health Safety and Environment) of the drilling operations" as well as the creation of general policy manuals and procedures. While the appellants claim that a remedial plan set into place by Trinidad Ltd. after the accident was evidence of its specific control over the rig, they do not claim that it exercised any authority over this aspect of safety before the accident. *See Little*, 409 S.W.3d at 721 (distinguishing prior case where parent company had authority to compel safety procedures but did not exercise it versus case where parent company mandated specific safety policies). On the contrary, the appellants asserted in their petition that Trinidad Ltd. "had knowledge of the dangerous operations, activities and conditions relating to derrick strikes" but "did not make changes to policies and/or procedures regarding preventing derrick strikes until after" the accident. Because the appellants have not alleged specific control before the accident, there are insufficient jurisdictional facts to establish specific control over a Texas premises which would give rise to liability. *See Tidwell*, 867 S.W.2d at 23.

Here, the appellants have not alleged or presented evidence of any Texas activity by Trinidad Ltd. out of which the tort claims against it arise. Thus, the trial court properly found that it could not exercise specific jurisdiction over Trinidad Ltd. *See Kelly*, 301 S.W.3d at 658.

## II.   General jurisdiction

The appellants also assert that general jurisdiction is appropriate based on Trinidad Ltd.'s contacts with Texas. General jurisdiction is described as "dispute-blind," and it allows a court to exercise jurisdiction over a defendant without regard to the nature of the claim presented. *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007). As a result, a general jurisdiction inquiry requires a "more demanding minimum contacts analysis" with a "substantially higher" threshold than a specific jurisdiction inquiry. *Id.* In conducting the analysis, "we do not view each contact in isolation." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 809 (Tex. 2002). "All contacts must be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuous and systematic activity." *Id*.

As recently explained by the United States Supreme Court, the relevant inquiry for general jurisdiction is not merely whether a nonresident defendant's contacts with the forum are "continuous and systematic" in some sense. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014). Rather, the exercise of general jurisdiction

over a nonresident defendant comports with due process only when the nonresident defendant's "affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." *Id.* (characterizing the exercise of general jurisdiction in every State in which a corporation "engages in a substantial, continuous, and systematic course of business" as "unacceptably grasping").

Under the standard recently clarified by the Court, the paradigm forum for the exercise of general jurisdiction is the one in which the corporation is "fairly regarded as at home." *Id.* at 760; *Goodyear Dunlop*, 131 S. Ct. at 2853–54. The Court has identified two examples: a corporation's place of incorporation and its principal place of business. *Daimler*, 134 S. Ct. at 760. Furthermore, the scope of the general jurisdiction analysis is not limited to the defendant's contacts with the forum state. *Id.* at 762 n.20. The analysis instead requires "an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id*. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.*

While Trinidad Ltd. negated specific jurisdiction on a legal basis, it responded with its own evidence to factually negate appellants' assertion that exercising general jurisdiction over it was appropriate in Texas.[2] It submitted two affidavits of

---

[2] The appellants contend that implying findings to support the trial court's ruling on a special appearance is appropriate only when the court conducts an evidentiary hearing or denies the special appearance. To the extent this legal issue could be an open one in the wake of *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 & n.4 (Tex. 2013), we need not resolve the

one of its vice presidents, Gavin Lane. In the affidavits, Lane stated that Trinidad Ltd. was not a resident of Texas and did not conduct business in the United States. He acknowledged that Trinidad LP was an indirect subsidiary of Trinidad Ltd., but he asserted that Trinidad Ltd. had no contacts of its own in Texas. Among other things, Lane averred that Trinidad Ltd. did not maintain a place of business in Texas, did not occupy or own any real or personal property in Texas, did not have agents or employees or officers within Texas, and had never directly controlled, managed, or supervised a place of business in Texas.

To support the exercise of general jurisdiction, the appellants alleged in their special appearance response that Trinidad Ltd. employees had taken 126 trips to Texas over a period of over three years between February 2007 and June 2010. They further alleged that Trinidad Ltd. had a director residing in Texas and an employee working in Texas; that it used Wells Fargo N.A., located in Houston, as one of its bankers; and that it maintained Texas offices. Finally, they reiterated their allegation that Trinidad Ltd. controls the drilling operations and policies on Trinidad LP's Texas-based drilling rig.

Attached to their special-appearance filings, the appellants included evidence in the form of email correspondence among employees of the Trinidad corporate

issue. As in *Moncrief Oil*, we conclude that the relevant facts necessary to resolve this appeal are undisputed. *See also Wellness Wireless*, 2013 WL 978270, at *3 n.1.

family, deposition testimony of some of those employees, and Trinidad's annual reports and website. The correspondence included emails and a memorandum concerning drilling safety procedures, written by Rodney Foreman and Bryan Kryzanowski, and addressed to employees of Trinidad Ltd. The email signature of one message written by Foreman identified him as the "General Manager of Corporate [Health, Safety, and Environment]" for "Trinidad Drilling Ltd." The signature on Foreman's e-mail also listed an office phone number with a Houston area code. The appellants argue that the email signature established Foreman's status as an employee of Trinidad Ltd., and that the phone number established the existence of a Trinidad Ltd. Houston office. The memorandum, which postdated the rig accident in this case, reported the findings of an undescribed meeting and apparently detailed "Remedial Action Plans" that various drilling divisions of the Trinidad corporate family would implement to prevent future incidents. Kryzanowski was listed in the memo as a "Top Drive Superintendent," which the appellants contend demonstrates Trinidad Ltd.'s right to control and set policies for the top drive rigs such as the one Alvarado was working on when he was killed.

To the extent the appellants assert that routine corporate control over a subsidiary operating in Texas is itself a contact with Texas, such an allegation does not suffice to subject the parent corporation to general jurisdiction in Texas unless the appellants have met their burden under an alter-ego theory to "fuse" the parent

company and its subsidiary for jurisdictional purposes. *BMC Software*, 83 S.W.3d at 799. In this case, however, the appellants specifically disclaim reliance on an alter-ego theory.

Instead, the appellants rely on the trips of Trinidad Ltd.'s employees in Texas to support general jurisdiction. Although we do not view each contact in isolation, occasional travel to Texas is insufficient by itself to establish general jurisdiction. *Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 410 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418, 104 S. Ct. 1868, 1874 (1984)). Even before the applicable standard was clarified by the *Goodyear Dunlop* and *Daimler* cases, numerous trips to the forum state were considered inadequate to establish general jurisdiction when the trips did not enhance the nature of the defendant's contacts with the state. *Helicopteros*, 466 U.S. at 418, 104 S. Ct. at 1874; *accord DENSO Corp. v. Hall*, 396 S.W.3d 681, 693 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding that 155 trips to Texas by foreign corporation personnel over a ten-year period did not support general jurisdiction because evidence did not establish a general business presence).

The appellants did not make any allegation about the trips beyond the fact that they occurred. As evidence, they attached only a printed list containing names of Trinidad Ltd. employees with corresponding airlines and destinations. The printed list provides virtually no context to the trips, nor does it supply any evidence to

15

support an inference that the trips demonstrate that Trinidad Ltd. is fairly regarded as at home in Texas. Rather, Trinidad Ltd. supplied the only evidence on this point. According to the undisputed testimony in Gavin Lane's affidavit, the trips were taken to "ensure that operations of [Trinidad LP] were in accordance with the corporate structure and to assist in the formation of [Trinidad LP]," not to "conduct business" on behalf of Trinidad Ltd. Trips relating to the normal parent-subsidiary relationship, such as trips to provide support and conduct oversight, do not give rise to general jurisdiction. *See Preussag Aktiengellschaft v. Coleman*, 16 S.W.3d 110, 124–25 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.).

The remainder of the contacts on which appellants rely—Trinidad Ltd.'s use of Wells Fargo's services and alleged maintenance of an office with an employee in Texas—are similarly devoid of factual allegations about their nature or evidence to support an inference that Texas is the forum in which Trinidad Ltd. is "essentially at home." *See Daimler*, 134 S. Ct. at 761. While the appellants relied on pages in Trinidad Ltd.'s annual reports that list the Houston office of Wells Fargo as one of Trinidad Ltd.'s "bankers," they adduced no evidence concerning the nature of that contact or the manner in which Trinidad Ltd. used the services of Wells Fargo in Houston. While maintenance of a bank account in Texas is a factor that we consider when determining whether the defendant is subject to general jurisdiction, *see Waterman Steamship*, 355 S.W.3d at 420, the inquiry nevertheless also considers the

16

quality and nature of the contact. Thus, the amount of funds placed in accounts, the number of transactions involving the accounts, and how the defendant used the accounts are all relevant to whether the contact is so continuous and systematic as to render the defendant "essentially at home" in the forum state. *See id.* at 420–21; *Daimler*, 134 S. Ct. at 761. Even assuming, in the appellants' favor, that evidence of a "banker" in Texas constitutes evidence that Trinidad Ltd. maintained a bank account in Texas, this fact alone does not give rise to general jurisdiction. As such, Trinidad Ltd. could negate general jurisdiction based on this contact without responding with any evidence at all. *See Kelly*, 301 S.W.3d at 659 (explaining that a defendant can satisfy its burden by showing that alleged facts are legally insufficient to establish jurisdiction).

Finally, the appellants' allegation that Foreman is an employee of Trinidad Ltd. and maintains an office in Texas, even if credited in their favor, says little about the quality and extent of that contact. Likewise, the appellants' evidence establishes only that Trinidad Ltd. has a director residing in Texas. The maintenance of an office or a physical presence in a state is an indicator of a corporation's connection with the forum. *See PHC-Minden*, 235 S.W.3d at 167–68; *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 708 (Tex. App.—Dallas 2010, no pet.). But the immutable touchstone of general jurisdiction analysis is the "quality and nature of the activity" conducted in the forum state. *Int'l Shoe*, 326 U.S. at 319, 66 S. Ct. at 159–60; *see also Am. Type*

17

*Culture Collection, Inc.*, 83 S.W.3d at 809–10. The quality and nature of the contacts required has been formulated as those contacts which render the corporation "essentially at home in the forum State." *Daimler*, 134 S. Ct. at 754. Thus, merely having an office or a physical presence in a forum does not compel a finding of general jurisdiction. *Waterman Steamship*, 355 S.W.3d at 418–19; *Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 217 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("The significance of this contact depends on the type and nature of office maintained."). Without more, the appellants' allegations and evidence on this point fail to tip the scale in favor of the exercise of general jurisdiction. *See Int'l Shoe*, 326 U.S. at 317, 66 S. Ct. at 159 ("[I]t has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there.").

The appellants contend in their reply briefing that Foreman's job title ("General Manager of Corporate [Health, Safety, and Environment]"), and the subject matter of his emails (discussions of implementing safety policies for all drilling operations), indicates that his work was central to the business of Trinidad Ltd. While these discrete facts are not inconsistent with an inference that Texas is Trinidad Ltd.'s principal place of business, by themselves they are insufficient to establish that fact. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274–75 (6th

18

Cir. 1998) (resolving factual disputes in favor of plaintiffs, but holding that evidence consistent with jurisdictional inferences does not amount to proof of same). Moreover, without evidence about the full nature of Trinidad Ltd.'s business and contacts with Texas as compared to other forums, the record does not support the exercise of general jurisdiction based on the presence of a single employee in Texas. As explained by the U.S. Supreme Court, the general jurisdiction analysis requires consideration of the corporation's activities "in their entirety, nationwide and worldwide." *Daimler*, 134 S. Ct. at 762 n.20 (clarifying that general jurisdiction analysis does not focus "solely" on corporation's contacts with the forum state, because "[a] corporation that operates in many places can scarcely be deemed at home in all of them").

The appellants' allegations and the record evidence do not support a finding that Trinidad Ltd.'s contacts with Texas were so substantial that it was "essentially at home" in Texas. *See Goodyear*, 131 S. Ct. at 2851. As a result, we conclude that Trinidad Ltd. satisfied its burden to negate its unrelated contacts with Texas as a basis for the exercise of general jurisdiction. *See Kelly*, 301 S.W.3d at 659.

## Conclusion

Having concluded that Trinidad Drilling Limited met its burden to establish that it was not subject to jurisdiction in Texas, we affirm the trial court's interlocutory order sustaining the special appearance.


Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.