

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00222-CV

_____

HILTON FRANCHISE HOLDING LLC, Appellant

V.

MICHELLE PEGUERO, MACHASITY PEGUERO, RUBY PEGUERO, AND
KAYCIE PEGUERO, Appellees

_____

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-340963-23

_____

Before Bassel, Womack, and Walker, JJ
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

While working on the construction of a hotel in Weatherford, Texas (the Hotel), Octavio Peguero fell four stories to the ground and died as a result of his injuries. Octavio's daughters—Appellees Michelle Peguero, Machasity Peguero, Ruby Peguero, and Kaycie Peguero (collectively the Pegueros)—filed suit against a number of defendants allegedly involved in the construction of the Hotel, including Appellant Hilton Franchise Holding LLC,[1] an out-of-state defendant. Hilton filed a special appearance, contending that the trial court lacked personal jurisdiction over it. After the trial court denied Hilton's special appearance, Hilton filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7).

In one issue, Hilton contends that the trial court erred by denying its special appearance. In response, the Pegueros argue that the trial court did not err by denying Hilton's special appearance, and, alternatively, they request that we remand the case to the trial court so that they can conduct jurisdictional discovery. Because we will determine that Hilton is not subject to either general or specific jurisdiction in Texas, we will hold that the trial court erred by denying Hilton's special appearance. And because the Pegueros did not move for a continuance in the trial court so that

---

[1]Some portions of the record refer to Appellant as "Hilton Franchise Holding LLC," while others refer to it as "Hilton Franchise Holding, LLC." We have styled our case using the name listed by Appellant in the notice of appeal: "Hilton Franchise Holding LLC."

they could conduct jurisdictional discovery and because they did not submit an affidavit as contemplated by Texas Rule of Civil Procedure 120a(3) explaining their need for jurisdictional discovery, we will reject their request that we remand the case. *See* Tex. R. Civ. P. 120a(3). Accordingly, we will reverse the trial court's order denying Hilton's special appearance and render judgment dismissing the Pegueros' claims against Hilton for want of personal jurisdiction.

## II. BACKGROUND

### A. The Pegueros' Factual Allegations

As alleged in the Pegueros' petition,[2] on January 26, 2022, Octavio was working as an electrician on the construction site of the Hotel. The Hotel was owned by NP Hospitality, LLC. NP Hospitality was subject to a franchise agreement with Hilton concerning the Hotel, in which Hilton was the franchisor and NP Hospitality was the franchisee. The general contractor on the construction site was I & A Development & Construction, LLC. I & A Development's "supervisor responsible for oversight of the jobsite" was Jacob Donahue. I & A Development "contracted for the electrical work to be completed by [Larry Smallwood d/b/a Electrical Solutions] and/or [Joel Alejandro Diaz Lopez d/b/a Quality and Prestige Remodeling]." Octavio "was an agent, servant, and/or employee" of Smallwood and Lopez.

---

[2]When we speak of the Pegueros' "petition," we are referring to their second amended petition—i.e., their live petition.

3

As alleged, I & A Development supplied a forklift for use on the construction site and constructed a wood box to be affixed to the forklift to be used in taking materials to and from the various floor levels of the four-story Hotel. On the morning of the incident, Octavio "was working on the fourth level of the building when supplies were lifted up to the fourth level via the box affixed to the forklift." "As [Octavio] attempted to retrieve the materials from the box, the box tipped, causing the box to come off the forks and both the box and [Octavio] fell four levels to the ground." Octavio died as a result of his injuries.

## B. The Pegueros' Lawsuit

The Pegueros sued Hilton, among other defendants, for negligence, gross negligence, and wrongful death.[3] The Pegueros' petition contained numerous statements concerning the various defendants' roles in constructing the Hotel. The Pegueros identified I & A Development as "the entity in control of the jobsite," stated that Donahue was the I & A Development "supervisor responsible for oversight of the jobsite," said that NP Hospitality "was the owner of [the Hotel] and controlled the [Hotel]," and asserted that NP Hospitality "exercised and/or retained some control over the manner in which the subject injury-causing activity . . . was performed." The Pegueros also stated that I & A Development, Donahue,

---

[3]The Pegueros also sued I & A Development, Donahue, Smallwood, Lopez, and NP Hospitality.

Smallwood, and Lopez were "all subject to control of the owner for the property, Defendant NP Hospitality."

As to Hilton, the Pegueros alleged that "Hilton was the franchisor and controlled the subject property and is thus liable for the ongoing negligent activity at the subject property." The Pegueros also alleged that Hilton "exercised and/or retained some control over the manner in which the subject injury-causing activity . . . was performed." They also stated that I & A Development, Donahue, Smallwood, Lopez, and NP Hospitality "were all subject to control of the franchisor for the property, Defendant Hilton."

As to personal jurisdiction, the Pegueros stated in their petition that "[a]ll Defendants are citizens of the State of Texas," although they identified Hilton as "a foreign limited liability company" with its principal office located in Virginia.

## C. Hilton's Special Appearance

Hilton filed a special appearance, contending that it was "not subject to personal jurisdiction in Texas." Hilton argued that the trial court did not have either general or specific jurisdiction over it, and, accordingly, the trial court should dismiss it from the lawsuit. Hilton attached to its special appearance an affidavit from James O. Smith, its Assistant Secretary. In his affidavit, Smith averred, in pertinent part:

- The Pegueros "commenced a lawsuit against [Hilton] allegedly arising from an incident on January 26, 2022[,] during the construction of [the Hotel], notwithstanding the fact that the Hotel is independently owned and operated by [NP Hospitality] pursuant to a franchise agreement."

5

- Hilton "franchises 'Hampton Inn & Suites' branded hotels," and "[f]ranchised 'Hampton Inn & Suites' hotels are owned and operated by various independent franchisees."

- "There are approximately 2,300 franchised 'Hampton Inn' and 'Hampton Inn & Suites' branded hotels in the United States."

- "Of the approximately 2,300 'Hampton Inn' and 'Hampton Inn & Suites' franchised hotels located in the United States, approximately 202 are located in Texas."

- Hilton "is a Delaware limited liability company with its principal place of business in Virginia."

- Hilton "is not registered or licensed to do business in the [S]tate of Texas," and it "does not hold title to or lease any real property in the [S]tate of Texas."

- Hilton "does not own, operate, manage, maintain, or control the day-to-day operations of the Hotel," and it "does not employ, control, manage[,] or supervise the personnel working at the Hotel."

- "On March 1, 2018, Panchal Investments Inc. entered into a franchise agreement with [Hilton].  That franchise agreement was assigned to [NP Hospitality] on April 10, 2019."

- "Under the franchise agreement, [NP Hospitality] obtained a license to use the brand 'Hampton Inn & Suites' in the operation of the Hotel."

- NP Hospitality "is an independent entity," and Hilton "does not have any ownership interest in [NP Hospitality] or the Hotel."

- Hilton "did not have any responsibility for, or control of any kind over, the day-to-day activities or operations, or the personnel working at the Hotel, on or prior to January 26, 2022," and Hilton "has not had any responsibility for, or control of any kind over,

6

the day-to-day activities or operations, or the personnel working at the Hotel, on or prior to January 26, 2022."

- "At all times relevant to this lawsuit, [NP Hospitality] has had exclusive control over the Hotel's daily affairs and exclusive day-to-day control of the business and operation of the Hotel," and Hilton "has not, and does not, in any way possess or exercise such control."

- Hilton "did not and does not employ any persons working at the Hotel," and Hilton "did not employ any persons or entities associated with building or constructing the Hotel."

## D.  The Pegueros' Response to Hilton's Special Appearance

The Pegueros filed a response to Hilton's special appearance.  They did not attach any evidence to controvert Smith's affidavit.[4]  In their response, the Pegueros maintained that they "do not argue that [Hilton] is subject to general personal jurisdiction in Texas but do argue and will address . . . why [Hilton] is subject to specific personal jurisdiction in Texas."  The Pegueros then focused their argument on specific jurisdiction.[5]

Within the body of their response, the Pegueros stated, "If the Court is inclined to grant [Hilton's] Special Appearance . . . [the Pegueros] would request a continuance

---

[4]The Pegueros attached two exhibits to their response:  their petition and Smith's affidavit.

[5]While their argument focused on specific jurisdiction, the Pegueros also mentioned that Hilton had "engag[ed] in significant and systematic business in Texas," stating that Hilton "franchises more than 200 'Hampton Inn' and 'Hampton Inn & Suites' in Texas (nearly 10% of their total franchise locations in the United States)."

7

in order to conduct jurisdictional discovery on this issue. Such jurisdictional discovery would include reviewing the franchise agreement for the subject Hampton Inn & Suites." The prayer of their response, however, did not mention a continuance or reference a need to conduct jurisdictional discovery; rather, the Pegueros' prayer simply requested that the trial court deny Hilton's special appearance.

## E. The Trial Court's Denial of Hilton's Special Appearance

The trial court later conducted a hearing on Hilton's special appearance. The Pegueros did not ask for a continuance at the hearing, nor did they mention any need for jurisdictional discovery. Following the hearing, the trial court signed an order denying the special appearance. The trial court did not make any findings of fact or conclusions of law. This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7).

## III. DISCUSSION

In its sole issue, Hilton argues that the trial court erred by denying its special appearance.[6]

## A. Standard of Review

To issue a binding judgment, a court must have personal jurisdiction over a defendant. *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023); *Luciano v.*

---

[6]Hilton frames its issue as a question: "Is a nonresident franchisor subject to personal jurisdiction in Texas for negligence claims at a franchisee's property when the franchisor's sole alleged contact with the State is a franchise agreement and the cause of action does not arise out of that franchise agreement?"

8

*SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7–8 (Tex. 2021). A Texas court may exercise jurisdiction over a nonresident defendant if (1) it is authorized by the Texas long-arm statute and (2) it is consistent with federal and state due-process guarantees. *LG Chem Am., Inc.*, 670 S.W.3d at 346; *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023). As the Texas Supreme Court has explained:

> Our long-arm statute reaches as far as the federal constitutional requirements for due process will allow, so Texas courts may exercise personal jurisdiction over foreign defendants having such contacts with the forum [s]tate that the maintenance of the suit is reasonable[ ] in the context of our federal system of government and does not offend traditional notions of fair play and substantial justice. This minimum contacts inquiry is a forum-by-forum or sovereign-by-sovereign analysis that examines the nature and extent of the defendant's relationship to the forum to determine whether the defendant is amenable to general or specific jurisdiction.

*Volkswagen*, 669 S.W.3d at 412 (quotations and footnotes omitted).

A nonresident defendant may challenge a Texas court's exercise of personal jurisdiction over it by filing a special appearance under Texas Rule of Civil Procedure 120a. *See* Tex. R. Civ. P. 120a. In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof. "The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of the long-arm statute." *LG Chem Am., Inc.*, 670 S.W.3d at 346 (citing *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010)). "The defendant then bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.* (citing *Kelly*, 301 S.W.3d at 658). "The defendant can negate personal jurisdiction

on either a factual or legal basis." *Id.* (citing *Kelly*, 301 S.W.3d at 659). The defendant "can present evidence that contradicts the plaintiff's factual allegations supporting the assertion of personal jurisdiction, and the plaintiff can then respond with its own evidence supporting its allegations." *Id.* "Or the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish personal jurisdiction." *Id.*

Whether a court can exercise personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Volkswagen*, 669 S.W.3d at 413. When, as here, a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *Bautista v. Trinidad Drilling Ltd.*, 484 S.W.3d 491, 497 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Texas Rule of Civil Procedure 120a requires that a special appearance be determined on the pleadings, any stipulations by the parties, affidavits and attachments filed by the parties, results of discovery, and any oral testimony. *See* Tex. R. Civ. P. 120a(3); *see also Kelly*, 301 S.W.3d at 658 n.4 (stating that while pleadings are essential to frame the jurisdictional dispute, they are not dispositive, and additional evidence under Rule 120a "merely supports or undermines the allegations in the pleadings").

## B. General Jurisdiction

While the Pegueros stated in the trial court that they were not arguing that Hilton is subject to general jurisdiction in Texas, on appeal, the Pegueros maintain that "Hilton failed to present conclusive evidence to negate general jurisdiction."[7] We thus turn to the issue of whether the trial court has general jurisdiction over Hilton.

### 1. Applicable Law

A defendant's contacts with the forum can give rise to either general or specific jurisdiction. *LG Chem Am., Inc.*, 670 S.W.3d at 347; *Luciano*, 625 S.W.3d at 8. A court has general jurisdiction over a nonresident defendant whose "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Luciano*, 625 S.W.3d at 8 (quoting *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (alteration in original) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754 (2014))). "General jurisdiction relies on the defendant itself being tied up—almost entangled in a web—with the forum state." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016). "[T]he general jurisdiction analysis entails a high bar." *Id.*

"In general, a corporation is at home in its place of incorporation and its principal place of business, though in an exceptional case its operations in another forum may be so substantial and of such a nature to render the corporation at home

---

[7]Hilton also addresses general jurisdiction in its briefing.

there as well."[8] *Wilmington Tr., Nat'l Ass'n v. Hsin-Chi-Su*, 573 S.W.3d 845, 854 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see Daimler AG*, 571 U.S. at 139 n.19, 134 S. Ct. at 761 n.19 ("We do not foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."). The general jurisdiction inquiry "calls for an appraisal of a corporation's activities in their entirety" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler AG*, 571 U.S. at 139 n.20, 134 S. Ct. at 762 n.20.

## 2. Analysis

We begin our analysis by addressing whether the Pegueros alleged below that the trial court had general jurisdiction over Hilton. *See LG Chem Am., Inc.*, 670 S.W.3d at 346; *Kelly*, 301 S.W.3d at 658. In their petition, the Pegueros stated that "[a]ll Defendants are citizens of the State of Texas," although they identified Hilton as "a foreign limited liability company" with its principal office located in Virginia. The Pegueros made no reference to general jurisdiction in their petition, nor did they assert in that pleading that Hilton is "at home" in Texas. *See Luciano*, 625 S.W.3d at 8.

---

[8]Similar analysis applies to limited liability companies like Hilton. *See Ascentium Cap. LLC v. Hi-Tech the Sch. of Cosmetology Corp.*, 558 S.W.3d 824, 828 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("A court may exercise general jurisdiction over a defendant limited liability company if the company was organized under the law of the forum state or has its principal place of business there.").

12

In their response to Hilton's special appearance, the Pegueros expressly stated that they "do not argue that [Hilton] is subject to general personal jurisdiction in Texas."

Based on this record, we hold that the Pegueros did not allege general jurisdiction as a basis of personal jurisdiction in the trial court; thus, we need not consider the Pegueros' arguments relating to general jurisdiction on appeal. *See LG Chem Am., Inc.*, 670 S.W.3d at 346 (holding that "[t]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of the long-arm statute" and that "[t]he defendant then bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff"); *George v. Deardorff*, 360 S.W.3d 683, 688 (Tex. App.—Fort Worth 2012, no pet.) (focusing analysis on specific jurisdiction when the appellant "did not plead any facts in her petition to show general jurisdiction" and when the appellant stated in her special appearance response that "she was 'not alleging general jurisdiction applies here'"); *cf. Baldaramos v. Metamorphosis Consulting, LLC*, No. 04-19-00356-CV, 2019 WL 6719033, at *6 (Tex. App.—San Antonio Dec. 11, 2019, no pet.) (mem. op.) ("Because Metamorphosis did not plead sufficient allegations to establish general jurisdiction over Baldaramos and Rejuvya . . . , we reverse the trial court's order denying the special appearances and render judgment dismissing Metamorphosis's claims against Baldaramos and Rejuvya.").

Even if we considered the Pegueros' arguments on appeal concerning general jurisdiction, we would hold that the trial court does not have general jurisdiction over

Hilton. To that end, Smith's affidavit established that Hilton "is a Delaware limited liability company with its principal place of business in Virginia." Thus, barring "an exceptional case," Hilton is not "at home" in Texas. *See Daimler AG*, 571 U.S. at 139 n.19, 134 S. Ct. at 761 n.19; *Wilmington Tr., Nat'l Ass'n*, 573 S.W.3d at 854; *Ascentium Cap. LLC*, 558 S.W.3d at 828. We further hold that this is not such an "exceptional case." As reflected in Smith's affidavit, less than nine percent of Hilton's approximately 2,300 "Hampton Inn" and "Hampton Inn & Suites" branded hotels are located in Texas. Moreover, those branded hotels "are owned and operated by various independent franchisees," and Hilton "does not hold title to or lease any real property" in Texas, nor is it "licensed to do business" in Texas.

On this record, we conclude that the evidence does not satisfy the "high bar" for general jurisdiction. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 406, 137 S. Ct. 1549, 1554 (2017) (holding that Montana court lacked general jurisdiction over railroad company that had approximately six percent of its total track mileage in Montana, employed less than five percent of its total workforce in Montana, generated less than ten percent of its total revenue in Montana, and maintained only four percent of its automotive facilities in Montana); *Weeks Marine Co., LLC v. Landa*, 629 S.W.3d 742, 754–55 (Tex. App.—San Antonio 2021, no pet.) (concluding that "the evidence does not satisfy the high bar for general jurisdiction" when over the previous five years only "eight percent of Weeks's projects have been located in Texas and it derived twelve percent of its total revenue from Texas projects"); *see also Fidrych v. Marriott Int'l,*

14

*Inc.*, 952 F.3d 124, 134 (4th Cir. 2020) ("Because there is nothing that would distinguish Marriott's relationship with South Carolina from its relationship with any of the other states where it does business but where it is not incorporated or headquartered, this is not the exceptional case for general jurisdiction contemplated by the *Daimler* Court.").

## C. Specific Jurisdiction

We now turn to the question of whether the trial court has specific jurisdiction over Hilton with respect to the Pegueros' claims.

### 1. Applicable Law

With specific jurisdiction, a minimum-contacts showing requires two things: (1) that "the defendant purposefully avails itself of the privilege of conducting activities in the forum state"; and (2) "the suit 'arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Luciano*, 625 S.W.3d at 8–9. When assessing whether minimum contacts are satisfied, we look only to the defendant's contacts and not the "unilateral activity" of some third party. *Id.* at 9 (first citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005); and then citing *Burger King v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239–40 (1958))).

"[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac River Expeditions v. Drugg*,

15

221 S.W.3d 569, 585 (Tex. 2007). A specific jurisdiction analysis assesses the quality and nature of the contacts, not the quantity, and those contacts must be purposeful and not random, fortuitous, or attenuated. *Volkswagen*, 669 S.W.3d at 413–14.

## 2. Analysis

In the Pegueros' petition, they alleged that Hilton "exercised and/or retained some control over the manner in which the subject injury-causing activity . . . was performed." And in their response to Hilton's special appearance, the Pegueros alleged that "[b]ut for the franchise agreement entered into by Defendant Hilton, the construction would not have occurred and the injury would not have occurred." We will analyze these two bases for specific jurisdiction—Hilton's control over the construction site and Hilton's franchise agreement—in turn.

### a. Hilton's Control Over the Construction Site

As mentioned previously, the Pegueros alleged below that Hilton "exercised and/or retained some control over the manner in which the subject injury-causing activity . . . was performed." Hilton attempted to refute that allegation through Smith's affidavit, which explained that Hilton did not have control over the construction site.

On appeal, the Pegueros argue that Smith's affidavit is conclusory. While the Pegueros did not object to Smith's affidavit below, an objection that an affidavit is conclusory may be raised for the first time on appeal. *See Stayton v. FCI Lender Serv., Inc.*, No. 02-21-00084-CV, 2022 WL 1682428, at *4 (Tex. App.—Fort Worth May 26,

16

2022, pet. denied) (mem. op.) ("The Staytons may raise [their argument that the affidavit is conclusory] on appeal despite not preserving it in the trial court."); *Golden Agri-Res. Ltd. v. Fulcrum Energy LLC*, No. 01-11-00922-CV, 2012 WL 3776974, at *12 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, pet. denied) (mem. op.) (stating that "conclusory affidavit testimony is substantively defective despite the lack of an objection in the trial court" when analyzing an affidavit in the special-appearance context). "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Bishara v. Tex. Health Harris Methodist Hosp. Fort Worth Inc.*, No. 02-20-00316-CV, 2021 WL 3085748, at *6 (Tex. App.—Fort Worth July 22, 2021, no pet.) (mem. op.); *Lindley v. McKnight*, 349 S.W.3d 113, 126 (Tex. App.—Fort Worth 2011, no pet.).

Here, Smith's affidavit provided more than mere conclusions. In this regard, Smith explained that "the Hotel is independently owned and operated by [NP Hospitality] pursuant to a franchise agreement." He stated that "[u]nder the franchise agreement, [NP Hospitality] obtained a license to use the brand 'Hampton Inn & Suites' in the operation of the Hotel." Smith averred that NP Hospitality "is an independent entity" and that Hilton "does not have any ownership interest in [NP Hospitality] or the Hotel." He further stated that "[a]t all times relevant to this lawsuit, [NP Hospitality] has had exclusive control over the Hotel's daily affairs and exclusive day-to-day control of the business and operation of the Hotel" and that Hilton "has not, and does not, in any way possess or exercise such control."

17

Smith also explained that Hilton "does not own, operate, manage, maintain, or control the day-to-day operations of the Hotel" and that it "does not employ, control, manage[,] or supervise the personnel working at the Hotel." Smith stated that Hilton "did not and does not employ any persons working at the Hotel" and that Hilton "did not employ any persons or entities associated with building or constructing the Hotel." Accordingly, Smith averred that Hilton "did not have any responsibility for, or control of any kind over, the day-to-day activities or operations, or the personnel working at the Hotel, on or prior to January 26, 2022," and that Hilton "has not had any responsibility for, or control of any kind over, the day-to-day activities or operations, or the personnel working at the Hotel, on or prior to January 26, 2022."

We hold that Smith's affidavit is not conclusory because it contained the underlying facts to support his conclusion that Hilton did not exercise any control over the construction site at the time of Octavio's fall. *See Bugle Shipping Co. Ltd. v. Sheikh*, No. 14-22-00470-CV, 2023 WL 7034213, at *5 (Tex. App.—Houston [14th Dist.] Oct. 26, 2023, no pet.) (mem. op.) (rejecting argument—in special-appearance context—that affidavit was conclusory regarding ownership and control of a ship when affiant stated that foreign entity "ha[d] never held an ownership interest in the [ship]" but had "merely provided corporate management services to the owner of the [ship]" and that foreign entity "was not the ship manager of the [ship]" and "had no control over where the [ship] traveled"); *Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co.*, 472 S.W.3d 744, 755–56 (Tex. App.—Houston [1st Dist.] 2015, no

18

pet.) (rejecting argument—in special-appearance context—that statement in affidavit was conclusory regarding parties "right to direct and control the details of any assigned employee's work" when the challenged statement "was supported by additional factual statements regarding the nature of the control purportedly exerted by the other entities").

We thus reject the Pegueros' argument that Hilton's alleged control of the construction site provides a basis for the trial court to exercise specific jurisdiction over Hilton.

### b. Hilton's Franchise Agreement

As noted above, the Pegueros argued below that "[b]ut for the franchise agreement," Octavio's injury would not have occurred.[9] But such a simplistic "but-for causation" argument is insufficient to establish specific jurisdiction. *See Moncrief Oil Int'l Inc.*, 414 S.W.3d at 157 (holding that "but-for causation alone is insufficient" to establish specific jurisdiction); *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 671 (Tex. App.—Fort Worth 2001, no pet.) (holding that "generalized 'but for' relationship between the forum and a non-resident defendant"—in that case, the argument was that a party could not have made modifications to an aircraft but for a different

---

[9]The Pegueros do not make this argument in their appellate brief; rather, they focus their specific-jurisdiction analysis on Hilton's alleged control of the construction site.

19

party's prior manufacture of the aircraft in Texas—"falls far short of meeting the requirement for specific jurisdiction").

Moreover, we reject the argument that a nonresident franchisor is subject to specific jurisdiction for claims arising from injuries at a franchise location merely due to the existence of a franchise agreement. In *Kumon N. Am. Inc. v. Nguyen*, a plaintiff was injured at a franchised learning center in Texas. No. 14-18-00639-CV, 2020 WL 3527615, at *1 (Tex. App.—Houston [14th Dist.] June 30, 2020, no pet.) (mem. op.). The plaintiff sued the nonresident franchisor. *Id.* The franchisor challenged the trial court's personal jurisdiction with a special appearance, which the trial court denied. *Id.*

On appeal, the plaintiff pointed to the existence of the franchise agreement in an attempt to establish specific jurisdiction. *Id.* at *3. But the court of appeals rejected that argument, holding that "a contract with a Texas resident, standing alone, does not establish jurisdiction." *Id.* at *4. The appellate court noted that the plaintiff had not shown that the franchisor's entering into the franchise agreement was the basis for her negligence claims. *Id.* Rather, the evidence showed that the franchisee "was solely responsible for hiring, training, supervising, and paying its employees" and was "solely responsible for keeping the [facility] in a safe condition." *Id.* Accordingly, the court of appeals held that the trial court lacked specific jurisdiction over the franchisor, and it reversed the trial court's order denying the special appearance and rendered judgment against the plaintiff for want of jurisdiction. *Id.* at *5.

20

Here, the Pegueros, like the plaintiff in *Kumon*, have not demonstrated that their claims arise out of the franchise agreement. Accordingly, we reject the Pegueros' argument that the existence of the franchise agreement provides a basis for the trial court to exercise specific jurisdiction over Hilton. *See id.* at *4 (holding that Kumon's franchise agreement, "standing alone, does not confer specific jurisdiction on the trial court"); *see also Roman v. Affinity Worldwide, LLC*, No. 5:19-CV-06095-DGK, 2020 WL 8339208, at *5 (W.D. Mo. Apr. 23, 2020) (order) ("[A] franchisor is not subject to specific personal jurisdiction in a state simply by virtue of having a franchisee there."); *Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F. Supp.2d 694, 700 (N.D. Ill. 2008) (mem. op. and order) ("[T]he mere fact that a franchisor has franchisees in a particular state does not subject it to that state's jurisdiction."). We thus hold that Hilton is not subject to specific jurisdiction in Texas regarding the Pegueros' claims.

Having determined that Hilton is not subject to either general or specific jurisdiction in Texas, we hold that the trial court erred by denying Hilton's special appearance. We sustain Hilton's sole issue.

## D. To Reverse and Remand or to Reverse and Render?

We now turn to the question of whether we should reverse and remand or reverse and render. In their brief, the Pegueros argue that if we are inclined to reverse the trial court's denial of Hilton's special appearance, then we should remand the case to the trial court so that they can conduct jurisdictional discovery. Hilton counters that we should render judgment—rather than remanding the case to allow for

21

jurisdictional discovery—because the Pegueros never moved for a continuance in the trial court to conduct jurisdictional discovery and because they did not submit an affidavit as contemplated by Texas Rule of Civil Procedure 120a(3).[10] *See* Tex. R. Civ. P. 120a(3).

### 1. Applicable Law

Texas Rule of Civil Procedure 120a(3) governs discovery issues related to special appearances. *See id.* That rule provides, in pertinent part, that "[s]hould it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." *Id.*

Rule 120a(3) gives the trial court the discretion to continue a special appearance hearing, "but this power applies only to a party opposing the special appearance who avers that he cannot adequately prepare for the special appearance hearing." *Said v. Maria Invs., Inc.*, No. 01-08-00962-CV, 2010 WL 457463, at *3 (Tex. App.—Houston [1st Dist.] Feb. 11, 2010, pet. denied) (mem. op. on reh'g). "Rule 120a(3) provides the procedure a party *must use* to postpone disposition of the special appearance in order to conduct additional discovery." *Parex Res., Inc. v. ERG Res., LLC*, 427 S.W.3d 407,

---

[10]Hilton also asserts that the Pegueros never sought any jurisdictional discovery from it.

433 (Tex. App.—Houston [14th Dist.] 2014), *aff'd sub nom. Searcy v. Parex Res., Inc.*, 496 S.W.3d 58 (Tex. 2016) (emphasis added).

## 2. Analysis

Here, the Pegueros did not file a motion for continuance pertaining to the special appearance hearing. Rather, within the body of their response to the special appearance, they stated, "If the Court is inclined to grant [Hilton's] Special Appearance . . . [the Pegueros] would request a continuance in order to conduct jurisdictional discovery on this issue. Such jurisdictional discovery would include reviewing the franchise agreement for the subject Hampton Inn & Suites."[11] But that response—which merely referenced a conditional, potential request for a continuance based on a conditional, potential request for jurisdictional discovery—is not a motion for a continuance, particularly because the response's prayer did not mention a

___

[11]In their brief, the Pegueros cite a number of cases seemingly for the proposition that the statement made in their response is enough to invoke Rule 120a(3). We disagree. In each of the cases cited by the Pegueros for this point, the plaintiff specifically filed a motion for continuance of the special appearance hearing so that jurisdictional discovery could be conducted. *See Mt. McKinley Ins. Co. v. Grupo Mex.*, No. 13-12-00347-CV, 2013 WL 1683641, at *2 (Tex. App.—Corpus Christi–Edinburg Apr. 18, 2013, no pet.) (mem. op.) (discussing trial court's consideration of "a motion for continuance of the special appearance hearing in light of the fact that Grupo was allegedly refusing to provide discovery related to the jurisdiction issue"); *In re Guardianship of Cardenas*, No. 13-09-00560-CV, 2010 WL 2543650, at *7 (Tex. App.—Corpus Christi–Edinburg June 24, 2010, no pet.) (mem. op.) (considering whether trial court "abused its discretion in denying [the appellant's] motion for continuance to procure evidence to establish the trial court's in personam jurisdiction over [the] appellee"); *Barron v. Vanier*, 190 S.W.3d 841, 851 (Tex. App.—Fort Worth 2006, no pet.) (op. on reh'g) ("Pursuant to Rule 120a(3), Barron attached affidavits from three attorneys who represented him to his motion for continuance.").

23

continuance but simply requested that the trial court deny Hilton's special appearance, and even more particularly because the Pegueros did not raise the need for a continuance at the special appearance hearing. Moreover, even if the Pegueros' response could be construed as a motion for continuance, it does not comply with Rule 120a(3) because it was not supported by an affidavit explaining why the Pegueros could not adequately respond to the special appearance without jurisdictional discovery. *See* Tex. R. Civ. P. 120a(3); *Parex Res., Inc.*, 427 S.W.3d at 433; *Said*, 2010 WL 457463, at *3.

Accordingly, because the Pegueros did not move for a continuance of the special appearance hearing and did not comply with Rule 120a(3), we reject their argument that we should remand the case for jurisdictional discovery.[12] *See IRN Realty*

---

[12]The Pegueros cite several cases for the proposition that we should remand to the trial court so that it can determine whether jurisdictional discovery is needed. But the cases the Pegueros rely on for that point are distinguishable because the plaintiffs in those cases either expressly moved for a continuance or expressly requested additional jurisdictional discovery. *See City of Dallas v. Monroy*, No. 05-22-00012-CV, 2022 WL 4363836, at *8 (Tex. App.—Dallas Sept. 21, 2022, no pet.) (mem. op.) (remanding the case "to allow the trial court to consider Monroy's motion for continuance requesting jurisdictional discovery"); *Helmer v. Rusco Operating, LLC*, No. 03-21-00148-CV, 2022 WL 963236, at *1 (Tex. App.—Austin Mar. 31, 2022, no pet.) (mem. op.) (remanding "for the trial court to consider Rusco's request for additional jurisdictional discovery"); *LG Chem, Ltd. v. Turner*, No. 14-19-00326-CV, 2021 WL 2154075, at *6 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.) (remanding the case so trial court could consider "requested additional discovery in [plaintiff's] response to appellant's special appearance"); *Morris Indus., Inc. v. Trident Steel Corp.*, No. 01-09-01094-CV, 2010 WL 4484351, at *5 (Tex. App.—Houston [1st Dist.] Nov. 10, 2010, no pet.) (mem. op.) ("We reverse the trial court's order denying Morris's special appearance and remand the case to allow the trial court to consider Trident's motion for continuance requesting jurisdictional discovery.").

*Corp. v. Hernandez*, 300 S.W.3d 900, 903 (Tex. App.—Eastland 2009, no pet.) (holding that trial court abused its discretion by abating special appearance hearing when appellee "did not comply with the provisions of Rule 120a" and "did not file any . . . affidavit stating that she could not present facts essential to justify her opposition to the special appearance"); *see also Haferkamp v. Grunstein*, No. 11-10-00194-CV, 2012 WL 1632009, at *9 (Tex. App.—Eastland May 10, 2012, pet. denied) (per curiam) (mem. op.) (holding that trial court did not abuse its discretion by denying further jurisdictional discovery when appellant "did not file a motion to continue" the special appearance hearing and "did not provide the court with an affidavit stating the reasons why she could not present the facts that were essential to justify her opposition to the special appearances").

## IV. CONCLUSION

Having sustained Hilton's sole issue and having rejected the Pegueros' argument that we should remand the case to the trial court so that they can conduct jurisdictional discovery, we reverse the trial court's order denying Hilton's special appearance and render judgment dismissing the Pegueros' claims against Hilton for want of personal jurisdiction.

---

Indeed, in one of the cases cited by the Pegueros, the appellate court noted, "Ordinarily, when an appellate court determines that the trial court erroneously denied a nonresident's special appearance, the court renders judgment dismissing the claims against the nonresident defendant for want of jurisdiction." *Morris Indus., Inc.*, 2010 WL 4484351, at *4.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  November 27, 2024